## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOSE SERPA, | **CASE NO.:** _____ |
| Plaintiff, | **COMPLAINT FOR DAMAGES**<br>**AND DEMAND FOR JURY TRIAL** |
| vs. | **1. Breach of Implied Warranties**<br>**2. Strict Liability – Design Defect**<br>**3. Negligence** |
| BRISTOL-MYERS SQUIBB COMPANY;<br>ASTRAZENECA PHARMACEUTICALS<br>LP; AND MCKESSON CORPORATION, | **4. Failure to Warn**<br>**5. Breach of Express Warranties** |
| Defendants. | |

## COMPLAINT

Plaintiff Jose Serpa (alternatively referred to herein as "Plaintiff"), residing in Tulare, California, by and through the undersigned counsel, files this Complaint against Defendants Bristol-Myers Squibb Company, AstraZeneca Pharmaceuticals, LP, and McKesson Corporation and for his Complaint states, upon information and belief and based upon investigation of counsel, as follows:

## I.  INTRODUCTION

1.    This is an action for damages relating to the Defendants' design, manufacture, sale, marketing, advertising, promotion, labeling, packaging, and distribution of their drug Saxagliptin. Defendants sell their Saxagliptin drug under the brand names Onglyza and Kombiglyze XR. Saxagliptin, in any of its forms or products, including Onglyza and Kombiglyze XR, shall herein be referred to as "Saxagliptin."

2.      Saxagliptin is prescribed to help lower blood sugar levels in persons with type 2 diabetes mellitus.

3.      The use of Saxagliptin can cause heart failure, congestive heart failure, cardiac failure, death from heart failure, and other serious health conditions.

4.      Mr. Serpa ingested Saxagliptin, and as a result of use of the drug suffered injuries.

## II.      GENERAL ALLEGATIONS

5.      Plaintiff by and through Plaintiff's attorneys, brings this action for personal injuries suffered as a result of being prescribed and ingesting the defective and unreasonably dangerous prescription drug Onglyza.

6.      Onglyza is prescribed to help lower blood sugar levels in persons with type 2 diabetes mellitus, and at all times relevant hereto, was manufactured, designed, tested, packaged, labeled, marketed, advertised, promoted, distributed, and sold by Defendants Bristol-Meyers Squibb Company, AstraZeneca Pharmaceuticals LP, and McKesson Corporation (collectively "Defendants"). On information and belief, Mr. Serpa ingested Saxagliptin resulting in injuries.

## III.      PARTIES

7.      At all times relevant to this action, Plaintiff, was an individual, citizen and resident of Tulare, California.

8.      Upon information and belief, Mr. Serpa ingested Saxagliptin from approximately on or around 2012 until on or around April 2014, resulting in injuries, including, but not limited to Congestive Heart Failure.

9.      Mr. Serpa was prescribed Saxagliptin for treatment of type 2 diabetes mellitus by his primary care physician, Dr. Shital Hubli, as well as among other physicians, often in the form of samples provided to him by his physicians.

10.     In May 2013, Mr. Serpa, at the age of 63, was diagnosed, for the first time, with Congestive Heart Failure by Dr. Gurinder Grewal, a Cardiologist, at San Joaquin Cardiology Medical Group in Tracy, California.

11.     Defendant Bristol-Myers Squibb Company ("BMS") is a Delaware corporation with its principal place of business at 345 Park Ave., New York, NY 10154.  At all relevant times, BMS has conducted business and derived substantial revenue from its manufacturing, advertising, distributing, selling and marketing of Saxagliptin within the states of California and Pennsylvania.

12.     Defendant AstraZeneca Pharmaceuticals LP ("AZ") is a Delaware limited partnership with its principal place of business at 1800 Concord Pike, Wilmington, DE 19850.  At all relevant times, AZ has conducted business and derived substantial revenue from its manufacturing, advertising, distributing, selling and marketing of Saxagliptin within the states of California and Pennsylvania.

13.     Defendant McKesson Corporation ("McKesson") is a Delaware corporation with its principal place of business at One Post Street, San Francisco, California 94104.  At all relevant times, McKesson has conducted business and derived substantial revenue from its manufacturing, advertising, distributing, selling and marketing of Saxagliptin within the states of California and Pennsylvania.

14.     Hereinafter the aforementioned Defendants may collectively be referred to as "Defendants."

15.     At all relevant times, each Defendant acted in all aspects as the agent and alter ego of each other.

16.     At all relevant times, Defendants acted in concert with one another to fraudulently convey false and misleading information concerning the safety and efficacy of Saxagliptin and to

conceal the risks of serious adverse events, including heart failure, congestive heart failure, cardiac failure, death from heart failure and other adverse effects associated with Saxagliptin from the public, Mr. Serpa, physicians, and other healthcare providers. These concerted efforts resulted in significant harm to those treated with Saxagliptin, including Mr. Serpa. But for the actions of Defendants, individually, jointly, and in concert with one another, Mr. Serpa would not have ingested Saxagliptin.

17. At all times alleged herein, Defendants were engaged in the business of, or were successors-in-interest to entities engaged in the business of, researching, designing, formulating, compounding, testing, manufacturing, producing, processing, assembling, inspecting, distributing, marketing, labeling, promoting, packaging, and/or advertising for sale or selling Saxagliptin.

18. At all times alleged herein, Defendants were authorized to conduct or engage in business within the states of California and Pennsylvania and supplied Saxagliptin within the states of California and Pennsylvania. Defendants received financial benefit and profits as a result of designing, manufacturing, marketing, advertising, selling and distributing Saxagliptin within the states of California and Pennsylvania.

19. The combined acts and/or omissions of each Defendant resulted in indivisible injuries to each Plaintiff. Each of the above-named Defendants is a joint tortfeasor and/or co-conspirator and is jointly and severally liable to Plaintiff for the negligent acts and omissions alleged herein. Each of the above-named Defendants directed, authorized or ratified the conduct of each and every other Defendant.

## IV.  JURISDICTION AND VENUE

20. Jurisdiction is proper in this court pursuant to 28 USC § 1332 as complete diversity of citizenship exists between Plaintiff and Defendants and the matter in controversy exceeds the

sum of $75,000.00, exclusive of interest and costs. Defendants are all incorporated and have their principal place of business in states other Plaintiffs' home state of California.

21.     This Court has jurisdiction over the non-resident Defendants because they have conducted business in the state of Pennsylvania.  Defendants have committed a tort in whole or in part in the state of Pennsylvania and have regular and continuing contacts with the state of Pennsylvania.

22.     At all times relevant to this action, Defendants engaged, either directly or indirectly, in the business of marketing, promoting, distributing, and selling prescription drug products, including Onglyza, within the state of Pennsylvania, with a reasonable expectation that Onglyza products would be used or consumed in this state, and thus regularly solicited or transacted business in this state.

23.     At all times relevant to this action, Defendants were engaged in substantial business activities in the states of California and Pennsylvania, including disseminating inaccurate, false, and misleading information about Onglyza to health care professionals in California and Pennsylvania with a reasonable expectation that such information would be used and relied upon by health care professionals throughout California, Pennsylvania and throughout the United States.

24.     At all relevant times, Defendants transacted, solicited, and conducted business in the state of Pennsylvania through their employees, agents, and/or sales representatives and derived substantial revenue from such business in the state of Pennsylvania.

25.     Further, Defendants committed torts in whole or in part against Plaintiff in the State of Pennsylvania. As such, this Court has personal jurisdiction over all named Defendants.

## V.   **FACTUAL ALLEGATIONS**

26.     Type 2 diabetes mellitus is a chronic disease, characterized by insulin resistance and deficient insulin secretion leading to high blood sugar levels and/or hyperglycemia.  Type 2 diabetics have an increased risk of cardiovascular  disease, which is the leading cause of morbidity and mortality in the patient population.  Therefore, it is critical that drugs developed to allegedly help prevent type 2 diabetes do not increase the risk of cardiovascular adverse events in users. With full knowledge of the susceptibility of type 2 diabetics to cardiovascular related adverse events, Defendants developed their drugs Onglyza and Kombiglyze XR to market and sell them to type 2 diabetics to allegedly lower adverse complications associated with type 2 diabetes.

27.     Saxagliptin works by inhibiting the proteolytic activity of DPP4, thereby potentiating the action of Glucagon-like peptide-1 (GLP-1), an antihyperglycemic hormone, known as an incretin.  This induces glucose-dependent stimulation of insulin secretion while suppressing glucagon secretion, which may help Saxagliptin users lower their HA1c.

28.     DPP4 inhibitors, including Saxagliptin, inhibit natural enzymes from cleaving, or stopping, the endogenous GLP-1, which enables the stimulation of insulin to continue longer than what naturally occurs after meals in the postprandial state.  Endogenous GLP-1's half-life is approximately two minutes without Saxagliptin exposure, but survives for at least three hours during Saxagliptin exposure.  Therefore, Saxagliptin manipulates the natural biological incretin effect by enabling the process to continue for an exponentially greater period of time than what the human body has adapted as a sufficient and safe period of time.  At no time during the development of its Saxagliptin drugs did Defendants perform adequate studies to determine if their drug, and its drastic alterations of the natural incretin hormone cycle, may cause increased risks of

cardiovascular related adverse events.  Such studies are essential when developing, and then marketing, diabetic drugs to individuals already at an increased cardiovascular risk.

29.    In December 2008, with knowledge of the increased cardiovascular risk type 2 diabetics suffer from, the FDA issued important guidance regarding this topic to companies developing anti-diabetic drugs, including Defendants.  The FDA's memorandum, entitled Final Guidance for Industry, *Diabetes Mellitus: Evaluating Cardiovascular Risk in New Antidiabetic Therapies to Treat Type 2 Diabetes,* stated applicants of new anti-diabetic medications for the treatment of type 2 diabetes should demonstrate their products are not associated with an unacceptable increase in cardiovascular risk.[1]  Despite this guidance being issued during the development of Defendants' drugs, Defendants failed to perform adequate clinical trials to determine if their drugs created such an increased risk.  Instead of adequately assessing the potential, and now established, significant risk of heart failure, congestive heart failure, cardiac failure, and death related to those events, prior to marketing and selling Saxagliptin nationwide to millions of type 2 diabetics, Defendants ignored patient safety and sold Saxagliptin before studying the risks.  Defendants marketed and sold Saxagliptin for nearly five years before completing an adequately powered and designed study of the risks of heart failure, congestive heart failure, cardiac failure, and death related to those events.

30.    On July 31, 2009 Defendants began marketing Onglyza.  On November 5, 2010, Defendants began marketing Kombiglyze XR.  Defendants marketed both drugs as treatments for type 2 diabetes and agents to help reduce adverse complications associated with the disease. At no time did Defendants perform adequate studies or adequately warn that Onglyza and Kombiglyze XR increased the risk of cardiovascular related adverse events.

---

[1] *Id.*

31.     After Defendants began selling and making substantial profits off their drugs Onglyza and Kombiglyze XR, Defendants finally conducted what the FDA guidance recommended back in December 2008 – a Cardiovascular Outcome Trial ("CVOT") for Saxagliptin.

32.     The CVOT for Saxagliptin entitled "Saxagliptin Assessment of Vascular Outcomes Recorded in Patients with Diabetes Mellitus — Thrombolysis in Myocardial Infarction 53" (SAVOR-TIMI 53 or more simply "SAVOR") found Saxagliptin users had a statistically significant increased risk of being hospitalized due to heart failure.

33.     After receiving and reviewing the disturbing findings from the SAVOR trial, the FDA requested the raw clinical trial data, free from manipulation by Defendants, and performed its own analysis of the SAVOR data.  Following the FDA's detailed analysis and review of the SAVOR safety signal for hospitalization for heart failure, the FDA's Endocrinologic and Metabolic Drugs Advisory Committee convened and voted 14 to 1 for the FDA to order Defendants to add a heart failure warning to its Saxagliptin drugs.  The single member who voted against adding the warning stated a warning was insufficient and the drug should instead be withdrawn from the US market.[2]  Despite the SAVOR findings and despite the FDA Advisory Committee voting to add a warning (or remove the drugs from the market), Defendants failed and continue to fail to warn.  Once again, Defendants place sales over patient safety.

34.     In addition to Defendants refusing and failing to warn of the risks of heart failure, congestive heart failure, cardiac failure and death, Defendants' Saxagliptin drugs lack any benefit

---

[2] Diabetes in Control (April 17, 2015) "FDA Panel Recommends New CV Safety Warnings on Onglyza and Nesina DPP-4s," available from: http://www.diabetesincontrol.com/articles/diabetes-news/17836-fda-panel-recommends-new-cv-safety-warnings-on-onglyza-and-nesina-dpp-4s-

sufficient to tolerate the risks posed by its use because other anti-diabetes drugs are available that do not carry the increased cardiac risks of Saxagliptin.

35.     Defendants, with knowledge of the true relationship between use of Saxagliptin and heart failure, congestive heart failure, cardiac failure, and death related to those events, promoted and continue to promote Saxagliptin as a safe and effective treatment for type 2 diabetes mellitus.

36.     Defendants over-promoted Saxagliptin and under-warned about Saxagliptin's risks through various avenues including, but not limited to, the following:

    a.   in print marketing, advertising, and promotional materials;

    b.   on Defendant-owned, controlled, or supported websites and blogs;

    c.   in materials and advertisements to Plaintiffs and consumers stating the use of Saxagliptin is safe; and

    d.   in promoting Saxagliptin to doctors, clinics, and users as being safer than (or as safe as) other drugs for the treatment of type 2 diabetes mellitus.

37.     At no time did Defendants perform adequate safety testing on Saxagliptin prior to marketing their drugs to the American public and failed to do so until performing the SAVOR trial.

38.     Despite the findings of the SAVOR trial, Defendants still have not undertaken efforts to change the labels and reference materials for Saxagliptin to include a reference or warning regarding heart failure, congestive heart failure, cardiac failure, and death related to those events.

## VI.    MR. SERPA'S USE OF SAXAGLIPTIN

39.     On information and belief, Mr. Serpa was prescribed and ingested Saxagliptin at various times.

40.     On information and belief, Mr. Serpa used Saxagliptin manufactured, packaged, marketed, sold and/or distributed by Defendants. The Saxagliptin reached Mr. Serpa without substantial change in the drug's condition.

41.     On information and belief, while using Saxagliptin, and as a direct and proximate result thereof, Mr. Serpa developed serious and/or permanent adverse effects including but not limited to congestive heart failure.

42.     As a result of said injuries, Mr. Serpa suffered significant bodily and mental injuries, pain and suffering, mental anguish, disfigurement, embarrassment, inconvenience, loss of earnings and earning capacity and have and will incur past and future medical expenses.

43.     At all relevant times, Defendants had knowledge that there was a significant increased risk of adverse events associated with Saxagliptin including heart failure, congestive heart failure, cardiac failure, and death related to those events, and despite this knowledge Defendants continued to manufacture, market, distribute, sell and profit from sales of Saxagliptin.

44.     Despite such knowledge, Defendants knowingly, purposely and deliberately failed to adequately warn Mr. Serpa, patients, consumers, medical providers and the public of the increased risk of serious injury associated with using Saxagliptin including but not limited to heart failure, congestive heart failure, cardiac failure, and death related to those events.

45.     On information and belief, Mr. Serpa' prescribing physicians would not have prescribed Saxagliptin to Mr. Serpa, would have changed the way in which they treated Mr. Serpa' relevant conditions, changed the way they warned Mr. Serpa about the signs and symptoms of serious adverse effects of Saxagliptin, and discussed with Mr. Serpa the true risks of heart failure, congestive heart failure, cardiac failure, and death related to those events, and other serious adverse

events had Defendants provided said physicians with an appropriate and adequate warning regarding the risks associated with the use of Saxagliptin.

46.     On information and belief, Mr. Serpa' prescribing health care providers were unaware of the true degree, incidence, and risk of heart failure, congestive heart failure, cardiac failure, and death related to those events associated with the use of Saxagliptin, and, if they had been informed, would have used and prescribed alternative therapies to Mr. Serpa.

47.     As a direct and proximate result of Defendants' conduct, Plaintiff suffered injuries, including, but not limited to congestive heart failure, which resulted in damages to Plaintiffs in a sum in excess of the jurisdictional limits of the Court.

48.     As a direct and proximate result of Defendants' conduct, Plaintiff incurred obligations and expenses for medical care, testing and treatment. As a direct and proximate result of Defendants' conduct, Plaintiff suffered loss of income, wages, profits and commissions, diminishment of earning potential, and other pecuniary losses.

49.     Defendants' conduct was committed with knowing, reckless, conscious, wanton, willful and deliberate disregard for the value of human life and the rights and safety of consumers, including Plaintiff, thereby entitling Plaintiff to punitive and exemplary damages so as to punish and deter similar conduct in the future.

## VI.    <u>FEDERAL REQUIREMENTS</u>

50.     Defendants had an obligation to comply with the law in the manufacture, design, and sale of Saxagliptin.

51.     Upon information and belief, Defendants violated the Federal Food, Drug and Cosmetic Act, 21 U.S.C. §301, et seq.

52.     With respect to Saxagliptin, the Defendants, upon information and belief, has or may have failed to comply with all federal standards applicable to the sale of prescription drugs including, but not limited to, one or more of the following violations:

a.   Saxagliptin are adulterated pursuant to 21 U.S.C. § 351 because, among other things, it fails to meet established performance standards, and/or the methods, facilities, or controls used for its manufacture, packing, storage or installation is not in conformity with federal requirements. See, 21 U.S.C. § 351.

b.   Saxagliptin are adulterated pursuant to 21 U.S.C. § 351 because, among other things, its strength differs from or its quality or purity falls below the standard set forth in the official compendium for Defendants' Saxagliptin and such deviations are not plainly stated on their labels.

c.   Saxagliptin are misbranded pursuant to 21 U.S.C. §352 because, among other things, it's labeling is false or misleading.

d.   Saxagliptin are misbranded pursuant to 21 U.S.C. §352 because words, statements, or other information required by or under authority of chapter 21 U.S.C. § 352 are not prominently placed thereon with such conspicuousness and in such terms as to render it likely to be read and understood by the ordinary individual under customary conditions of purchase and use.

e.   Saxagliptin are misbranded pursuant to 21 U.S.C. §352 because the labeling does not bear adequate directions for use, and/or the labeling does not bear adequate warnings against use where its use may be dangerous to health or against unsafe dosage or methods or duration of administration or application, in such manner and form as are necessary for the protection of users.

f.  Saxagliptin are misbranded pursuant to 21 U.S.C. §352 because it's dangerous to health when used in the dosage or manner, or with the frequency or duration prescribed, recommended, or suggested in the labeling thereof.

g.  Saxagliptin do not contain adequate directions for use pursuant to 21 CFR § 201.5, because, among other reasons, of omission, in whole or in part, or incorrect specification of (a) statements of all conditions, purposes, or uses for which it is intended, including conditions, purposes, or uses for which it is prescribed, recommended or suggested in their oral, written, printed, or graphic advertising, and conditions, purposes, or uses for which the drugs are commonly used, (b) quantity of dose, including usual quantities for each of the uses for which it is intended and usual quantities for persons of different ages and different physical conditions, (c) frequency of administration or application, (d) duration or administration or application, and/or (d) route or method of administration or application.

h.  The Defendants violated 21 CFR § 201.56 because the labeling was not informative and accurate.

i.  Saxagliptin are misbranded pursuant to 21 CFR § 201.56 because the labeling was not updated as new information became available that caused the labeling to become inaccurate, false, or misleading.

j.  The Defendants violated 21 CFR § 201.57 because they failed to identify specific tests needed for selection or monitoring of patients who took Saxagliptin.

k.  Saxagliptin are mislabeled pursuant to 21 CFR § 201.57 because the labeling does not state the recommended usual dose, the usual dosage range, and, if appropriate, an upper limit beyond which safety and effectiveness have not been established.

l.  Saxagliptin violate 21 CFR § 210.1 because the process by which it was manufactured, processed, and/or held fails to meet the minimum current good manufacturing practice of methods to be used in, and the facilities and controls to be used for, the manufacture, packing, or holding of a drug to assure that it meets the requirements as to safety and have the identity and strength and meets the quality and purity characteristic that they purport or are represented to possess.

m.  Saxagliptin violates 21 CFR § 210.122 because the labeling and packaging materials do not meet the appropriate specifications.

n.  Saxagliptin violates 21 CFR § 211.165 because the test methods employed by the Defendants are not accurate, sensitive, specific, and/or reproducible and/or such accuracy, sensitivity, specificity, and/or reproducibility of test methods have not been properly established and documented.

o.  Saxagliptin violate 21 CFR § 211.165 in that Defendants' Saxagliptin fail to meet established standards or specifications and any other relevant quality control criteria.

p.  Defendants violate 21 CFR § 211.198 because the written procedures describing the handling of all written and oral complaints regarding Saxagliptin were not followed.

q.  Defendants violate 21 CFR § 310.303 in that Saxagliptin are not safe and effective for its intended use.

r.  Defendants violated 21 CFR § 310.303 because the Defendants failed to establish and maintain records and make reports related to clinical experience or other data or information necessary to make or facilitate a determination of whether there are or may be grounds for suspending or withdrawing approval of the application to the FDA.

s.  Defendants violated 21 CFR §§310.305 and 314.80 by failing to report adverse events associated with Saxagliptin as soon as possible or at least within 15 days of the initial receipt by the Defendants of the adverse drugs experience.

t.  Defendants violated 21 CFR §§310.305 and 314.80 by failing to conduct an investigation of each adverse event associated with Saxagliptin, and evaluating the cause of the adverse event.

u.  Defendants violated 21 CFR §§ 310.305 and 314.80 by failing to promptly investigate all serious, unexpected adverse drug experiences and submit follow-up reports within the prescribed 15 calendar days of receipt of new information or as requested by the FDA.

v.  Defendants violated 21 CFR § 312.32 because they failed to review all information relevant to the safety of Saxagliptin or otherwise received by the Defendants from sources, foreign or domestic, including information derived from any clinical or epidemiological investigations, animal investigations, commercial marketing experience, reports in the scientific literature, and unpublished scientific papers, as well as reports from foreign regulatory authorities that have not already been previously reported to the agency by the sponsor.

w.  Defendants violated 21 CFR § 314.80 by failing to provide periodic reports to the FDA containing (a) a narrative summary and analysis of the information in the report and an analysis of the 15-day Alert reports submitted during the reporting interval, (b) an Adverse Reaction Report for each adverse drug experience not already reported under the Post marketing 15-day Alert report, and/or (c) a history of actions taken since the last report because of adverse drug experiences (for example, labeling changes or studies initiated).

53.     Defendants failed to meet the standard of care set by the above statutes and regulations, which were intended for the benefit of individual consumers such as the Plaintiff, making the Defendants liable under California and Pennsylvania law.

## VIII.   **DELAYED DISCOVERY**

54.     Defendants, through their affirmative misrepresentations and omissions, actively concealed from the Mr. Serpa and Mr. Serpa's physicians and healthcare providers the true and significant risks associated with Saxagliptin.

55.     As a result of Defendants' actions, Mr. Serpa and Mr. Serpa's physicians and healthcare providers were unaware, and could not have reasonably known or have learned through reasonable diligence, that Mr. Serpa had been exposed to the risks identified in this Complaint, and that those risks were the result of Defendants' acts, omissions, and misrepresentations.

56.     No limitations period ought to accrue until such time as Mr. Serpa knew or reasonably should have known of some causal connection between the use of Saxagliptin and the harm suffered as a result. As such, Plaintiffs hereby invoke the discovery rule based on the fact that this Complaint is filed well within the statutory period after Plaintiffs knew or should have known the facts alleged herein.

57.     Indeed, Plaintiffs were not aware of any connection between the use of Saxagliptin and any form of heart failure until Mr. Serpa saw a television commercial identifying the possible link between Saxagliptin and heart failure on or around March 2018 and was unaware of any facts establishing that he may have an actionable claim until nearer to the filing of this lawsuit.

58.     Additionally, the accrual and running of any applicable statute of limitations has been tolled by reason of Defendants' fraudulent concealment.

59.     Additionally, each Defendant is equitably estopped from asserting any limitations defense by virtue of its fraudulent concealment and other misconduct as described in this Amended Complaint.

## IX.     CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### BREACH OF IMPLIED WARRANTIES

60.     Plaintiff repeats, reiterates and re-alleges each and every allegation of this Complaint with the same force and effect as if fully set forth herein:

61.     In addition to warranting against defects, Defendants warrant that the subject product is reasonably fit for its ordinary and intended use.

62.     The subject product is not safe, has numerous and serious side effects and causes severe and permanent injuries including, but not limited to, Congestive Heart Failure and Heart Failure.

63.     As a direct and proximate result of Defendants' actions, Mr. Serpa has sustained serious, significant and permanent injuries including but not limited to Congestive Heart Failure, Heart Failure and related sequelae. In addition, Mr. Serpa required and will continue to require healthcare and services as a result of his injury. Plaintiff has incurred and will continue to incur medical and related expenses as a result of his injury. Mr. Serpa also has suffered and will continue

to suffer diminished capacity for the enjoyment of life, a diminished quality of life, increased risk of premature death, aggravation of preexisting conditions and activation of latent conditions, and other losses and damages. Plaintiff's direct medical losses and costs include care for hospitalization, physician care, monitoring, treatment, medications, and supplies. Mr. Serpa has incurred and will continue to incur mental and physical pain.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in Plaintiff's favor for compensatory and punitive damages, together with interest, costs herein incurred, attorneys' fees, and all such other and further relief as this Court deems just and proper, Plaintiff's also demands that the issues contained herein be tried by a jury.

## SECOND CAUSE OF ACTION
## STRICT LIABILITY - DESIGN DEFECT

64. Plaintiff repeats, reiterates and re-alleges each and every allegation of this Complaint with the same force and effect as if fully set forth herein.

65. At all relevant and material times, the Defendants designed, manufactured, packaged, marketed, advertised, distributed, and sold Saxagliptin, placing the products into the stream of commerce.

66. At all relevant and material times, Saxagliptin was designed, manufactured, packaged, marketed, advertised, distributed, and sold by Defendants in a defective and unreasonably dangerous condition.

67. Saxagliptin was expected to reach, and did reach, users and consumers, including Mr. Serpa, without any alterations or changes in their defective and unreasonably dangerous condition.

68. Saxagliptin was used by Mr. Serpa in the foreseeable manner normally intended, recommended, promoted, and marketed by Defendants.

69.    Saxagliptin was defective and unreasonably dangerous when each product entered the stream of commerce in one or more of the following particulars:

a.    Saxagliptin contained manufacturing and design defects in that each product caused and/or increased the risk of experiencing an adverse event, including but not limited to heart failure, congestive heart failure, cardiac failure, death from heart failure, and other serious health conditions;

b.    Saxagliptin was not safe because the health risks associated with each product outweighed the benefits;

c.    Saxagliptin was marketed and promoted for use when they carried an unreasonable and unnecessary risk of serious injury;

d.    Saxagliptin was insufficiently and/or inadequately tested by Defendants;

e.    Saxagliptin was not safe due, in part, to inadequate and defective instructions and inadequate and defective warnings provided by Defendants;

f.    Saxagliptin was unreasonably dangerous in that, as designed, the risks of serious injury posed by using the products exceeded any benefits the products were designed to or might in fact bestow;

g.    Saxagliptin was defective in design in that the products neither bore, nor was packaged with, nor was accompanied by, warnings adequate to alert users, including Mr. Serpa, of the increased risks associated with using the products, including, but not limited to, the risk of heart failure, congestive heart failure, cardiac failure, death from heart failure, and other serious health conditions;

h.    Saxagliptin was not accompanied by adequate warnings and instructions for use that included adequate information to fully apprise users, consumers, and the

medical, pharmaceutical and scientific communities of the potential risks and serious side effects associated with using the products;

i.  Saxagliptin was unsafe for normal or reasonably anticipated use. Said products were defective and unreasonably dangerous in design, construction and/or composition;

j.  Saxagliptin was defective and unreasonably dangerous because the product did not conform to an express warranty of the manufacturer about the product; and

k.  Saxagliptin was defective and unreasonably dangerous due to inadequate warnings, inadequate clinical trials, testing and study, and inadequate reporting regarding the results of the clinical trials, testing and study.

70.  Saxagliptin as manufactured and supplied by the Defendants was defective due to inadequate warnings and instructions because, after Defendants knew or should have known of the risk of injuries from use, Defendants failed to provide adequate warnings to the medical community and the consumers to whom the drugs were directly marketed and advertised; and, further, Defendants continued to affirmatively promote Saxagliptin as safe and effective.

71.  A reasonable person who had actual knowledge of the increased risks associated with using Saxagliptin would have concluded that Saxagliptin should not have been marketed to or used by Mr. Serpa and Mr. Serpa's physicians.

72.  Despite the fact Defendants knew or should have known of the defective nature of Saxagliptin, Defendants continued to design, manufacture and sell Saxagliptin so as to maximize sales and profits at the expense of the public health and safety.  Defendants thus acted with conscious and deliberate disregard of the foreseeable harm caused by Saxagliptin.

73.     Mr. Serpa and the non-defendant health care providers involved could not, through the exercise of reasonable care, have discovered the risk of serious injury associated with and/or caused by Saxagliptin.

74.     Mr. Serpa was not aware of the aforementioned defects at any time prior to the injuries caused by Saxagliptin.

75.     Had adequate information regarding the safety of the product been provided to Mr. Serpa, Mr. Serpa would not have used Saxagliptin.

76.     Defendants acted with conscious and/or deliberate disregard of the foreseeable harm caused by use of their product.

77.     As a direct and proximate consequence of Defendants negligence, willful, wanton, and intentional acts, omissions, misrepresentations and otherwise culpable acts, Mr. Serpa suffered the injuries and damages alleged herein, including economic losses.

78.     Defendants' actions and omissions as identified in this Complaint show that Defendants acted maliciously and/or intentionally disregarded Mr. Serpa' rights so as to warrant the imposition of punitive damages.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in Plaintiff's favor for compensatory and punitive damages, together with interest, costs herein incurred, attorneys' fees, and all such other and further relief as this Court deems just and proper, Plaintiff's also demands that the issues contained herein be tried by a jury.

## THIRD CAUSE OF ACTION
## NEGLIGENCE

79.     Plaintiff repeats, reiterates and re-alleges each and every allegation of this Complaint with the same force and effect as if fully set forth herein.

80. Defendants negligently manufactured, designed, labeled, packaged, distributed, marketed, advertised, and sold Saxagliptin.

81. At all relevant and material times, Defendants had a duty to Mr. Serpa to exercise reasonable care in the design, manufacture, advertising, marketing, labeling, packaging, distribution, post-market safety monitoring, reporting of adverse events, and sale of Saxagliptin, including a duty to ensure that the product did not cause users such as Mr. Serpa to suffer from unreasonable, dangerous side effects when used alone or in foreseeable combination with other drugs.

82. Defendants breached their duty of care to Mr. Serpa and were negligent in their actions, misrepresentations, and omissions in numerous ways including the following:

     a. Failing to perform adequate testing concerning the safety of Saxagliptin which would have shown Saxagliptin created a high risk of unreasonable, dangerous side effects, including causing and increasing the risk of heart failure, congestive heart failure, cardiac failure, death from heart failure, and other serious health conditions and other adverse effects, which would have permitted adequate and appropriate warnings to have been by given by Defendants to prescribing physicians and the consuming public, including Mr. Serpa;

     b. Failing to design Saxagliptin so as to properly minimize effects on receptors that were known to be associated with certain serious adverse effects;

     c. Failing to conduct adequate pre-clinical and clinical testing to determine the safety of Saxagliptin;

d.   Failing to report to the FDA, the medical community, and the general public the Saxagliptin data which indicated risks associated with using the product;

e.   Failing to conduct post-market monitoring and surveillance of Saxagliptin and analysis of adverse event reports;

f.   Designing, manufacturing, marketing, advertising, distributing, and selling Saxagliptin to consumers, including Mr. Serpa, without an adequate warning of risks associated with using the product and without proper and adequate instructions to avoid the harm which could foreseeably occur as a result of using the product;

g.   Failing to exercise due care when advertising, promoting, and selling Saxagliptin;

h.   Failing to use due care in the preparation, design and development of Saxagliptin to prevent, avoid, or minimize the risk of injury to individuals when the product were used;

i.   Failing to completely, accurately and in a timely fashion, disclose the results of the pre-marketing testing and post-marketing surveillance and testing to Mr. Serpa, consumers, the medical community, and the FDA;

j.   Failing to accompany Saxagliptin with proper warnings regarding all possible risks associated with using the product;

k.   Failing to use due care in the manufacture, inspection, and labeling of Saxagliptin to prevent risk of injuries to individuals who used the product;

l.   Failing to provide adequate and accurate training and information to the sales representatives who sold the product;

m.  Failing to educate healthcare providers and the public about the safest use of the product;

n.  Failing to give healthcare providers adequate information to weigh the risks of serious injury associated with the product;

o.  Failing to test and inspect Saxagliptin in a reasonable manner in order to ascertain whether or not it was safe and proper for the purpose for which it was designed, manufactured, and sold;

p.  Failing to warn Mr. Serpa of the danger of adverse medical conditions from the use of Saxagliptin; and

q.  Failing to label Saxagliptin to adequately warn Mr. Serpa of the serious adverse side effects with the use of Saxagliptin.

83.  Defendants advertised, marketed, sold and distributed Saxagliptin despite the fact that Defendants knew or should have known of the increased risks associated with using the product, including but not limited to heart failure, congestive heart failure, cardiac failure, death from heart failure, and other serious health conditions and other adverse effects of which Mr. Serpa and Mr. Serpa's healthcare providers would not have been aware.

84.  Defendants, individually and collectively, had a duty to warn the FDA, their customers, the medical community and the public about the increased risk of injury but failed to do so.

85.  Despite the fact Defendants knew or should have known that Saxagliptin increased the risk of serious injury including but not limited to heart failure, congestive heart failure, cardiac failure, death from heart failure, and other serious health conditions, Defendants continued to manufacture, market, advertise, sell and distribute Saxagliptin to consumers, including Mr. Serpa.

86.     Defendants negligently and recklessly represented to Mr. Serpa, physicians, and other persons and professionals Defendants knew would justifiably rely on the representations, that Saxagliptin was safe to use and that the utility of the product outweighed any risk in use for their intended purposes.

87.     Defendants negligently and recklessly failed to disclose to Mr. Serpa and others important safety and efficacy information about Saxagliptin, thereby suppressing material facts while under a duty to disclose such information.

88.     Defendants' representations about the safety and adverse side effects of Saxagliptin was negligently and recklessly made in that Saxagliptin in fact caused injury, was unsafe, and the benefits of its use were far outweighed by the risk associated with use thereof.

89.     Defendants knew or should have known that their representations and omissions were false. Defendants made such false, negligent and reckless representations and omissions with the intent or purpose that Mr. Serpa and any non-defendant physicians would rely upon such representations, leading to the use of Saxagliptin as described.

90.     Defendants omitted, suppressed and/or concealed material facts concerning the dangers and risk of injuries associated with the use of Saxagliptin, including serious injury. Furthermore, Defendants' purpose was willfully blind to, ignored, downplayed, avoided, and/or otherwise understated the serious nature of the risks associated with the use of Saxagliptin.

91.     At the time Defendants made these misrepresentations and/or omissions, they knew or should have known that Saxagliptin was unreasonably dangerous and not what Defendants had represented to Mr. Serpa, as well as the medical community, the FDA and the consuming public.

92.     Defendants' misrepresentations and/or omissions were undertaken with an intent that doctors and patients, including Mr. Serpa, rely upon them.

93.     Mr. Serpa and Mr. Serpa's healthcare providers did not know that these representations were false and justifiably relied on and were induced by Defendants' misrepresentations, omissions, and/or active concealment of the dangers of Saxagliptin to employ these products.

94.     As a direct and proximate consequence of Defendants' negligent, willful, wanton, and intentional acts, omissions, misrepresentations and otherwise culpable acts, Mr. Serpa sustained injuries and damages.

95.     Had Mr. Serpa been aware of the increased risk of side effects associated with Saxagliptin and the relative efficacy of Saxagliptin compared with other readily available product, Mr. Serpa would not have used these product.

96.     Defendants' actions and omissions as identified in this Complaint show that Defendants acted maliciously and/or intentionally disregarded Mr. Serpa' rights so as to warrant the imposition of punitive damages.

WHEREFORE, Plaintiffs respectfully requests that this Court enter judgment in Plaintiffs' favor for compensatory and punitive damages, together with interest, costs herein incurred, attorneys' fees, and all such other and further relief as this Court deems just and proper, Plaintiffs' also demands that the issues contained herein be tried by a jury.

### FOURTH CAUSE OF ACTION
### FAILURE TO WARN

97.     Plaintiff repeats, reiterates and re-alleges each and every allegation of this Complaint with the same force and effect as if fully set forth herein.

98.     Saxagliptin was unreasonably dangerous, even when used in a foreseeable manner as designed and intended by Defendants.

99.     At all relevant and material times, the Defendants designed, manufactured, packaged, marketed, advertised, distributed, and sold Saxagliptin, placing the product into the stream of commerce for sale to, and use by, members of the public, including the Saxagliptin used by Mr. Serpa.

100.     At all relevant and material times, Saxagliptin was designed, manufactured, packaged, marketed, advertised, distributed, and sold by Defendants in a defective and unreasonably dangerous condition.

101.     The Saxagliptin manufactured by Defendants reached Mr. Serpa without substantial change and was ingested as directed. The Saxagliptin was defective and unreasonably dangerous when it entered into the stream of commerce and when used by Mr. Serpa.

102.     Mr. Serpa was administered the Saxagliptin for its intended purpose.

103.     Mr. Serpa used Saxagliptin in the foreseeable manner normally intended, recommended, promoted, and marketed by Defendants.

104.     Defendants failed to warn and/or adequately warn Mr. Serpa, consumers, physicians, and healthcare professionals of the increased health risks associated with using Saxagliptin.

105.     Mr. Serpa did not have the same knowledge as Defendants and no adequate warning was communicated to them.

106.     Mr. Serpa could not have discovered any defect in the Saxagliptin through the exercise of reasonable care.

107.     Defendants, as manufacturers of Saxagliptin, are held to the level of knowledge of an expert in the field, and further, Defendants knew or should have known that warnings and other

clinically relevant information and data which they distributed regarding the risks of injuries and death associated with the use of Saxagliptin was incomplete and inadequate.

108.     Mr. Serpa did not have the same knowledge as Defendants and no adequate warning or other clinically relevant information and data was communicated to Mr. Serpa or to Mr. Serpa's treating physicians. The warnings given by Defendants were inaccurate, unclear, ambiguous, and/or incomplete.

109.     Defendants had a continuing duty to provide consumers, including Mr. Serpa, and Mr. Serpa's physicians with warnings and other clinically relevant information and data regarding the risks and dangers associated with Saxagliptin, as it became or could have become available to Defendants.

110.     Defendants marketed, promoted, distributed and sold unreasonably dangerous and defective prescription Saxagliptin to health care providers empowered to prescribe and dispense to consumers, including Mr. Serpa, without adequate warnings and other clinically relevant information and data. Through both omissions and affirmative misstatements, Defendants misled the medical community about the risk/benefit balance of Saxagliptin, which resulted in injury to Mr. Serpa.

111.     Defendants knew or should have known that Saxagliptin caused unreasonable and dangerous side effects and they continued to promote and market Saxagliptin without stating safer and more or equally effective alternative drug products existed and/or providing adequate clinically relevant information and data.

112.     Defendants knew or should have known that consumers, including Mr. Serpa, would foreseeably and needlessly suffer injury or death as a result of Defendants' conduct.

113.    Defendants failed to provide timely and adequate warnings to physicians, pharmacies, and consumers, including Mr. Serpa and to Mr. Serpa's intermediary physicians, in at least the following ways:

a.    Defendants failed to include adequate warnings and/or provide adequate clinically relevant information and data that would alert Mr. Serpa's physicians to the dangerous risks of Saxagliptin including, among other things, their tendency to increase the risk of, and/or cause, heart failure, congestive heart failure, cardiac failure, and death related to those events;

b.    Defendants failed to inform Mr. Serpa and Mr. Serpa's physicians that Saxigliptin had not been adequately tested to determine the full extent of the safety risks associated with use of the product;

c.    Defendants failed to provide adequate post-marketing warnings and instructions after Defendants knew or should have known of the significant risks of heart failure, congestive heart failure, cardiac failure, and death related to those events associated with use of Saxagliptin; and

d.    Defendants continued to aggressively promote and sell Saxagliptin even after they knew or should have known of the unreasonable risks of developing heart failure, cardiac failure, and death related to those events from ingestion of Saxagliptin.

114.    Defendants and each of them had a duty to warn the FDA, the medical community, Mr. Serpa, and Mr. Serpa's physicians about the increased risks of injury but failed to do so.

115.    Defendants had a duty and obligation to provide Mr. Serpa and Mr. Serpa's physicians with adequate clinically relevant information and data and warnings regarding the

adverse health risks associated with exposure to Saxagliptin, and/or that there existed safer and more or equally effective alternative drug products, but failed to do so.

116.     By failing to provide Mr. Serpa and Mr. Serpa's physicians with adequate clinically relevant information and data and warnings regarding the adverse health risks associated with exposure to Saxagliptin, and/or that there existed safer and more or equally effective alternative drug products, Defendants breached their duty of reasonable care and safety.

117.     Defendants' actions described above were performed willfully, intentionally, and with reckless disregard of the life and safety of the Mr. Serpa and the public.

118.     As a direct and proximate result of the actions and inactions of Defendants as set forth above, Plaintiffs sustained injuries and damages.

119.     Defendants' actions and omissions as identified in this Complaint show that Defendants acted maliciously and/or intentionally disregarded Plaintiffs' rights so as to warrant the imposition of punitive damages.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in Plaintiff's favor for compensatory and punitive damages, together with interest, costs herein incurred, attorneys' fees, and all such other and further relief as this Court deems just and proper.  Plaintiff also demands that the issues contained herein be tried by a jury.

## FIFTH CAUSE OF ACTION
## BREACH OF EXPRESS WARRANTY

120.     Plaintiff repeats, reiterates and re-alleges each and every allegation of this Complaint with the same force and effect as if fully set forth herein.

121.     The aforementioned manufacturing, compounding, packaging, designing, distributing, testing, constructing, fabricating, analyzing, recommending, merchandizing,

advertising, promoting, supplying and selling of Saxagliptin was expressly warranted to be safe for use by Mr. Serpa and other members of the general public.

122.     Defendants expressly represented to Mr. Serpa, consumers and the medical community that Saxagliptin was:

        a.     safe;

        b.     efficacious;

        c.     fit for use in persons with Type 2 diabetes mellitus;

        d.     of merchantable quality;

        e.     adequately tested;

        f.     well tolerated in adequate and well-controlled clinical studies; and

        g.     did not increase the risk of experiencing serious, life threatening side effects.

123.     Defendants breached those express warranties as follows:

        a.     Defendants misrepresented the safety of Saxagliptin in its labeling, advertising, marketing materials, seminar presentations, publications, notice letters, and regulatory submissions;

        b.     Defendants misrepresented the risks associated with using Saxagliptin;

        c.     Defendants withheld and/or concealed and/or downplayed the information and/or evidence that the products were associated with an increased risk of serious injury;

        d.     Defendants misrepresented that Saxagliptin was as safe or safer than other available forms of treatment for Mr. Serpa' conditions; and

e.     Saxagliptin was unaccompanied by adequate warnings of its dangerous propensities that were either known or knowable at the time of distribution.

124.   Saxagliptin did not conform to Defendants' express representations and warranties.

125.   At all relevant times, Saxagliptin did not perform as safely as an ordinary consumer would expect when used as intended or in a reasonably foreseeable manner.

126.   At all relevant times, Saxagliptin did not perform in accordance with the Defendants' representations because Saxagliptin is not safe and causes high levels of serious side effects.

127.   In deciding to purchase and use Saxagliptin, Mr. Serpa, other consumers, and the medical community relied upon Defendants' express warranties.

128.   As a direct and proximate consequence of Defendants' negligence, willful, wanton, and intentional acts, omissions, misrepresentations and otherwise culpable acts, Mr. Serpa sustained injuries and damages.

129.   Defendants' actions and omissions as identified in this Complaint show that Defendants acted maliciously and/or intentionally disregarded Plaintiff's rights so as to warrant the imposition of punitive damages.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in Plaintiff's favor for compensatory and punitive damages, together with interest, costs herein incurred, attorneys' fees, and all such other and further relief as this Court deems just and proper.  Plaintiff also demands that the issues contained herein be tried by a jury.

## X.     __PRAYER FOR RELIEF__

**WHEREFORE,** so far as the law and this Court allows, Plaintiff demands judgment against each Defendant on each count as follows:

a.      All available compensatory damages for the described losses with respect to each cause of action;

b.      Past and future medical expenses, as well as the cost associated with past and future life care;

c.      Past and future lost wages and loss of earning capacity;

d.      Past and future emotional distress;

e.      Consequential damages;

f.      All available noneconomic damages, including without limitation pain, suffering, and loss of enjoyment of life;

g.      Disgorgement of profits obtained through unjust enrichment;

h.      Restitution;

i.      Punitive damages with respect to each cause of action, if available by law;

j.      Reasonable attorneys' fees where recoverable;

k.      Costs of this action;

l.      Pre-judgment and all other interest recoverable; and

m.      Such other additional and further relief as Plaintiffs may be entitled to in law or in equity.

## XI.    **DEMAND FOR JURY TRIAL**

Plaintiffs demands a trial by jury on all issues so triable.


Dated: August 30, 2018

RESPECTFULLY SUBMITTED,


_____*/s/ David L. Friend*_____
David L. Friend
Pennsylvania Bar No. 308475
Wyoming Bar No. 7-5942
FRIEND LAW GROUP, LLC
30 N. Gould Street, #5646
Sheridan, WY 82801
307-683-0760
dfriend@friendlawgroup.com